## Odell *against* Culbert.

The rule of the common law with regard to the admission in evidence of books of original entry is greatly relaxed : such book of a plaintiff who is dead may be given in evidence upon proof of his handwriting.

The demand of a plaintiff as set forth in his declaration is to be considered the sum in controversy in a question of jurisdiction which is limited by statute.

Although a plaintiff recover an amount below the jurisdiction of the court, yet if it be reduced by evidence of set-off, the plaintiff will be entitled to his costs.

ERROR to the District Court of *Lancaster* county.

Joanna Culbert, administratrix of Michael Culbert, deceased, against Charles Odell, Thomas Keating, James Haughey and Phi-

lip Gossler, late partners. The case is fully stated in the opinion of the court.

*Stevens,* for plaintiffs in error.
*Frazer,* for defendant in error.

The opinion of the Court was delivered by

Burnside, J.—There are two errors assigned in this case. 1st, In admitting the account-book of the plaintiff. 2d, In giving judgment for costs. It was in evidence that the plaintiffs in error constructed the first section of the railroad next to Wrightsville, laying the rails, not grading the road, in the latter part of 1839 and beginning of 1840. It was further in evidence that Michael Culbert boarded the hands of Odell & Company under a contract for $2.25 per week, and found them in whiskey by the directions of Haughey, one of the firm, who appeared particularly to superintend this contract. Several of the hands were examined, as well as others, who proved the contract, the boarding and the furnishing the whiskey by directions of the defendant below. Culbert, who was dead at the time of the trial, kept a book of original entries, in which he charged the whiskey in lump, and opposite each boarder's name a row of short strokes or figures, *one* for each meal; and, in footing it up, called 22 meals a week's boarding. The book was proved to be Culbert's book and in his handwriting. The District Court admitted the book in evidence, and this is the first error complained of.

Taking this book in connection with the parol evidence given on the trial, we do not see that the plaintiffs in error have any just ground of complaint. The English rule, or more properly speaking, the rule of the Common Law, which admitted the party's own shop-book in proof of the delivery of goods therein charged, the entries having been made by a clerk when the books were kept for that purpose, and the entries made cotemporaneous with the delivery of the goods, and by the person whose duty it was for the time being to make them, never was rigidly adhered to in Pennsylvania, nor in any of the United States. *Greenl. Ev.* 137, 144. Hence we find in 1 *Dall.* 239, President Shippen says that here, from the necessity of the case, where business is often carried on by the principal, and many of our tradesmen do not keep clerks, the book proved by the oath of the plaintiff himself has always been admitted. And in 1 *Yeates* 347, it was held that a day-book is *primâ facie* evidence of the price of goods, as well as the sale and delivery. Judge Huston, in 16 *Serg. & Rawle* 133, says it is difficult to lay down any other rule than that such mode of keeping books as is usual and known to all tradesmen in the same business and all customers, cannot be safely declared bad by the court; and Judge Rogers, in 2 *Watts & Serg.* 20, that where due proof is made of the entries, the only inquiry on the

[Odell v. Culbert.]

point of admissibility of the book, is whether such facts are disclosed in respect to the delivery of the goods as destroy the right of the plaintiff to have the book submitted to the jury as *primâ facie* evidence of the sale and delivery of the goods to the defendant; and Judge KENNEDY, 1 *Watts & Serg.* 467, that where the books of original entry were kept (as in this case) in the form of a ledger, it would not prevent its admission in evidence to the jury. We have relaxed the ancient Common Law rule still further by admitting the books in evidence for the consideration of the jury where the clerk who made the entries is dead or out of the State, on proof of his handwriting, and proof that it was his business to make the entries. 2 *Watts & Serg.* 137. It has long been the universal practice to admit a deceased man's book in evidence, when the book would have been evidence with his oath if living, on proof of his handwriting. I can see no reasonable objection to this practice. Dead men's estates are sufficiently plundered even with this safeguard.

2d. This case was *assumpsit;* the plaintiff declared for $600 for work, labour and services, for goods, wares and merchandise, and for meat, drink, washing, and other necessaries. The pleas were *non assumpsit* and payment. On the face of the pleadings, the District Court had jurisdiction; the verdict was for $75; neither affidavit nor certificate of counsel was filed. To determine the question of costs we must look into the evidence given by the defendants; we find that in order to reduce the plaintiff's demand, the defendants gave in evidence a judgment from Squire Lloyd's docket, Henry Prenneman for the use of James Haughey against Michael Culbert for debt, $83.99, entered on the 13th December 1841, in the Common Pleas; also, a judgment or transcript entered in the Common Pleas to April 1843, for $14.99. These judgments, with their interest and costs, would amount to more than $100; and the defendants might or might not have set them off in this action. The 5th section of the Act of 1826 gives the District Court jurisdiction in all cases where the sum in controversy exceeds $100. The demand is the sum in controversy upon a question of jurisdiction. 10 *Watts* 299; 3 *Dall.* 401. Here the demand gave the court jurisdiction. That demand was reduced under $100 by set-off, and that set-off enables the plaintiff to recover his costs. 16 *Serg. & Rawle* 253; 7 *Watts* 346.

Judgment affirmed.