Engemann *v.* Colonial Trust Company, Appellant.

Argued March 26, 1954.   Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Robert L. Woshner,* for appellant.

*Hubert I. Teitelbaum,* with him *Edward H. Schoyer, Goldstock, Schwartz, Teitelbaum & Schwartz* and *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for appellees.

OPINION BY MR. JUSTICE BELL, May 24, 1954:

Alexandra Pattillo, Executrix of the Estate of Rena M. Stanton, and Sue Engemann, her devisee, brought an action in 1951 against the executor of John J. Sweeney, deceased, to quiet title and to decree a certain mortgage made by Rena M. Stanton to John J. Sweeney, secured upon premises 339 Atwood Street, Pittsburgh, be cancelled and marked satisfied and discharged. The mortgage was in the principal amount of $6,000; it was dated October 24, 1912; it was payable at the expiration of three years; and it was duly recorded.

Rena M. Stanton died December 26, 1950; John J. Sweeney died testate July 27, 1948.

Plaintiffs contended that the mortgage had been paid and rested their case on the presumption of payment which arises after the lapse of twenty years.

Defendant, in order to refute the presumption of payment, offered in evidence (1) the will of John J. Sweeney and (2) the original bond and mortgage of Rena M. Stanton which was in the possession of Sweeney at the time of his death, and (3) statements pertaining to and checks of Sweeney showing payment of real estate and school taxes on the mortgaged property over a period of years, and (4) checks of and payments made by Sweeney of insurance premiums on personal property of Rena M. Stanton in her Atwood Street home over a period of years. All of these offers of proof were rejected by the lower Court.

Mr. Sweeney's will contained the following provision: "I give, devise and bequeath to Rena M. Stanton the sum of Six Hundred ($600.00) Dollars annual income from bonds and mortgages to be paid to her in convenient installments during her natural life. I also direct that the mortgage of Six Thousand ($6,000.00) Dollars which I hold against the property of Rena M.

Stanton, 339 Atwood Street, Pittsburgh, Pa., be not foreclosed, nor shall any interest thereon be collected for and during the term of her natural life." The will was rejected because it was self-serving and was considered inadmissible under the Act of May 23, 1887, P. L. 158, § 5(e), 28 PS 322. The other exhibits were rejected because they were considered irrelevant.

Defendant also offered to prove by J. Howard Devlin, Esquire, Sweeney's attorney-in-fact, (a) that Sweeney made a statement to Devlin relative to the mortgage on the Atwood Street property, within two years prior to his death, and (b) that Devlin had a conversation with Rena M. Stanton in the summer of 1948 with reference to the mortgage. Objections to these offers were sustained by the Court, the first because it was self-serving (and obviously hearsay), and the second because any admissions made by the mortgagor were *inadmissible if made more than 20 years after the date of the mortgage.*

At the conclusion of the case the Court directed the jury to return a verdict for the plaintiffs, which the Court later—after a motion for a new trial—moulded into the form prescribed by Section 1066 of the Pennsylvania Rules of Civil Procedure.

The basic questions involve the admissibility of the above-mentioned offers of proof and the legality of the directed verdict. In order to answer these questions we deem it wise to state the applicable principles of law.

In *Corn v. Wilson,* 365 Pa. 355, 75 A. 2d 530, this Court said (pp. 358, 359): "There is a long established presumption that a mortgage, as well as all evidences of debt excepted out of the Statute of Limitations, unclaimed and unrecognized for 20 years, has been paid: [citing cases]. This presumption of payment after a lapse of 20 years is a strong one and is

favored in law as tending to the repose of society, the protection of the debtor, and the discouragement of stale claims: [citing cases].

"The presumption of payment may be rebutted only by clear, satisfactory and convincing evidence beyond that furnished by the specialty itself, that the debt has not been paid, or by proof of circumstances tending to negative the likelihood of payment and sufficiently accounting for the delay of the creditor: [citing cases].

"Moreover, whether the facts and evidence relied upon to rebut the presumption of payment are true is a question of fact for the jury; but whether, if true, they are sufficient to rebut the presumption, is a question of law for the court: [citing cases]."

While the presumption of payment increases in strength with the passage of years (after the first twenty) and is likewise, strengthened by the death of the debtor: *Frey's Estate,* 342 Pa. 351, 354, 21 A. 2d 23; *Gilmore v. Alexander,* 268 Pa. 415, 422, 112 A. 9, 11; *Richards v. Walp,* 221 Pa. 412, 70 A. 815; *Cannon v. Hileman,* 229 Pa. 414, 78 A. 932; *Gregory v. Commonwealth,* 121 Pa. 611, 15 A. 452; long lapse of time plus evidence sufficient to raise a presumption of payment cannot prevail against positive credible evidence of nonpayment: *Snyder Estate,* 368 Pa. 393, 397, 84 A. 2d 318; *Grenet's Estate,* 332 Pa. 111, 2 A. 2d 707.

In *Grenet's Estate,* supra, a finding by the auditing Judge that the note had *not* been paid was sustained although its only basis was the testimony of the attorney for the deceased payee that the maker told him that he could not pay the note, did not have the money to pay it, and would like an opportunity to work it out with the payee's widow. Mr. Justice, now Chief Justice, STERN said (pp. 113, 114): "Appellant relies upon the proposition that recovery was barred by the lapse

of twenty-six years between the time when the note was payable and when it was presented at the audit.

"The presumption of payment arising from lapse of time does not work an extinguishment of the debt, nor, unlike the bar of the statute of limitations, does it require a new promise or its equivalent to revive it. It is a presumption merely of fact, and amounts to nothing more than a rule of evidence which reverses the ordinary burden of proof and makes it incumbent upon the creditor to prove . . . that the debt was not actually paid. *This burden may be met by direct testimony as to non-payment,** or by proof of circumstances tending to negative the likelihood of the claim having been satisfied and explaining the delay of the creditor in attempting to enforce it,—for example, that *there existed a relationship between the parties which would account for the failure of the creditor to insist upon collection,* that the debtor's financial condition was such as would have prevented his paying the debt, that the bond, note or other instrument upon which the claim rested remained at all times in the creditor's possession, that the creditor had died and, no administrator being appointed, there was no one to whom payment legally could have been made. These and similar circumstances, while not, singly or collectively, conclusive, are admissible in evidence for the purpose of rebutting the presumption of payment. One of the most effective types of proof to that end is evidence that within the twenty-year period prior to suit the debtor made an unqualified acknowledgment that the debt was still due and unpaid. . . ."

Moreover, admissions by the mortgagor (to the mortgagee or even to a stranger) that the mortgage had not been paid are admissible even though made

---

* Italics throughout, ours.

more than 20 years after the mortgage became due, provided they are made within 20 years before suit is brought: *Frey's Estate*, 342 Pa. 351, 355, 21 A. 2d 23; *Gregory v. Commonwealth*, 121 Pa. 611, 622, 15 A. 452; *O'Hara v. Corr*, 210 Pa. 341, 59 A. 1099; *Grenet's Estate*, 332 Pa., supra.

The aforesaid authorities sustain several contentions of this appellant and require the granting of a new trial. It is clear that admissions by the mortgagor of non-payment are admissible if made within twenty years of suit; and if unqualified and believed, will completely and conclusively rebut the presumption of payment. Devlin's testimony as to his conversation with Rena M. Stanton in the summer of 1948 (or later) with reference to the mortgage and its payment or non-payment should therefore have been admitted. Moreover, Devlin's testimony cannot be excluded because it is adverse to the decedent; it is "adverse interest", not adverse testimony, which disqualifies a witness from testifying as to anything occurring before the death of the decedent: *Billow v. Billow*, 360 Pa. 343, 346, 61 A. 2d 817; *Weaver, Exr. v. Welsh*, 325 Pa. 571, 577, 191 A. 3; *King v. Lemmer*, 315 Pa. 254, 173 A. 176; *First National Bank of Bloomsburg v. Gerli*, 225 Pa. 256, 260, 74 A. 52, 53; *Edmundson's Estate*, 259 Pa. 429, 437, 103 A. 277.

Evidence that the original bond and mortgage of Rena M. Stanton was still in the possession of Sweeney at the time of his death is also admissible, as is any evidence of the existence of a relationship between the parties which would account for the failure of Sweeney to demand or insist upon payment: *Grenet's Estate*, 332 Pa., supra. For this purpose only, viz., to rebut the presumption of payment by showing facts or a relationship between the parties which would account for failure of Sweeney to press for payment of the

mortgage, statements and checks showing the payment by Sweeney over a period of years of real estate and school taxes on the mortgaged property and insurance premiums on Miss Stanton's personal property are admissible, unless an affectionate or intimate relationship between the mortgagor and mortgagee is admitted —in that event, the admissibility of the said statements and checks would likely cause confusion, since the payment of the taxes and insurance premiums is equivocal and does not prove that they were paid, as appellant contends, because of Sweeney's ownership of the mortgage.

The general rule is that verbal or written statements or declarations which are self-serving and are made in the absence of the other party to the transaction are inadmissible under the Hearsay Evidence Rule: *Emmons v. McCreery*, 307 Pa. 62, 160 A. 722; *31 C.J.S.*, §216, page 948; *Henry on Evidence*, 4th Ed., §475; *Marino v. Vecchio*, 83 Pa. Superior Ct. 377; *Wonsetler v. Wonsetler*, 23 Pa. Superior Ct. 321; *Hunter*, Pennsylvania Orphans' Court Commonplace Book, Vol. I, "Evidence", §2, page 415. It is clear that the statements which Sweeney made or might have made to Devlin just prior to his death, but in the absence of Miss Stanton, were obviously hearsay and, if self-serving, are inadmissible.

The admissibility of Sweeney's will which was executed before the mortgagor's death is a close and difficult question upon which we have found no direct authority.

If both mortgagor and mortgagee had been living at the time of the trial, Sweeney, the mortgagee, could have testified that the mortgage had never been paid, even though the suit had been brought more than 20 years after the maturity of the mortgage. If Sweeney were still alive and Miss Stanton dead, Sweeney could

not testify that the mortgage had never been paid—
he would not have been a competent witness to any
declaration, matter or fact made or occurring in her
lifetime: *Weaver, Exr. v. Welsh,* 325 Pa. 571, 577, 191
A. 3; Act of May 23, 1887, P. L. 158, §5(e); *Suther-
land v. Ross,* 140 Pa. 379, 21 A. 354; *Phillips's Estate,*
271 Pa. 129, 114 A. 375; *Campbell's Estate,* 274 Pa. 546,
551, 118 A. 547; *Edmundson's Estate,* 259 Pa. 429, 436,
103 A. 277; *Swieczkowski v. Sypniewski,* 294 Pa. 323,
144 A. 141.

But that still does not answer the crucial ques-
tion: Is the will of Sweeney (the mortgagee) executed
when Rena M. Stanton (the mortgagor) was still alive,
admissible when part of Sweeney's gift to her contains
by implication a self-serving declaration which tends
to rebut a presumption of payment? There is no doubt
in our mind that in the instant case Sweeney was con-
vinced, at the time he made his will, that the mortgage
of $6,000. on the Atwood Street property had never
been paid, and that he was doing Miss Stanton a favor
when he directed the mortgage should not be foreclosed
nor any interest thereon be collected from her during
her life. But once again that does not answer the
technical question of admissibility or inadmissibility
of the will.

In Pennsylvania a person cannot create or estab-
lish a liability in another by a declaration in his will
that the other party owes him a certain amount of
money, nor is such a will admissible in assumpsit for
the debt: *Zimmerman's Executors v. Zimmerman,* 47
Pa. 378; *Eichelberger's Estate,* 135 Pa. 160, 19 A.
1006. However, he can validly bequeath a legacy and
provide that there shall be deducted therefrom a cer-
tain amount which the legatee owes him; and such
a testamentary direction for the deduction of an al-
leged debt is conclusive on distribution, even though

the testator was mistaken as to its existence or amount, or even though the debt was barred by the Statute of Limitations or by payment: *Eichelberger's Estate,* 135 Pa., supra.

There are, however, exceptions, statutory and otherwise, to the "hearsay rule" and to the "dead man's rule". For example, "book entries" made in books of original entry for goods sold and delivered, or for services rendered, and a physician's books of original entry are admissible against a deceased debtor: *Keener v. Zartman,* 144 Pa. 179, 22 A. 889; *Huffman Estate No. 3,* 349 Pa. 59, 61, 36 A. 2d 500; *Fulton's Estate,* 178 Pa. 78, 87, 35 A. 880; *McKeehan Estate,* 358 Pa. 548, 552, 57 A. 2d 907; *Staggers's Estate,* 8 Pa. Superior Ct. 260; *Hunter's* Pennsylvania Orphans' Court Commonplace Book, Vol. I, page 420; 1939-1952 Supplement, page 144, 8(d); see also *Hoover v. Gehr,* 62 Pa. 136; *VanSwearingen v. Harris,* 1 W. & S. 356; *Odell v. Culbert,* 9 W. & S. 66; *Foster, Executor v. Wehr,* 114 Pa. Superior Ct. 101, 107, 173 A. 712.

Books of original entry possess the same objectionable characteristics as a last will and testament, namely, they are "hearsay" and "self-serving", without the advantage possessed by the latter of being made under very solemn circumstances and with (less or) no motive for falsification.

While Mr. Sweeney could not create a debt in or by his will (except for purposes of distribution), and any *self-serving* statement made therein would be inadmissible to prove a debt, we hold that this testamentary paragraph made under the most solemn circumstances, which contains what is primarily and expressly a gift to and a partial release of a friend and only by implication a self-serving statement, is admissible for the purpose of tending to rebut the presumption of payment.

We note that the admissibility of this will is in accord with American Law Institute "Model Code of Evidence", Rule 527,* page 292, which goes much further than our decision.

Judgment reversed and new trial granted.

---

* Rule 527 provides: "Evidence of a statement relevant to a material matter, contained in a deed of conveyance or a will or other document purporting to affect an interest in realty or personalty, offered as tending to prove the truth of the matter stated, is admissible if the judge finds that the matter stated would be relevant upon an issue as to an interest in the realty or personalty, and that the dealings with the realty or personalty since the statement was made have not been inconsistent with the truth of the statement." Our decision is not to be considered either an adoption or an approval or disapproval of Rule 527—as to that we express no opinion.